UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>GERALD BLAISE II,<br><br>Defendant-Appellant. | C.A. No. 25-463<br><br>D. Ct. No. CR-21-1028-04-PHX-MTL<br><br>**APPELLEE'S MOTION TO DISMISS APPEAL** |

Pursuant to Circuit Rule 27-9.2, the United States respectfully moves to dismiss Defendant's appeal because he knowingly and voluntarily waived his right to appeal his conviction and sentence.[1]  Enforcing Defendant's appellate waiver will not result in a miscarriage of justice, as his actual innocence claim fails both on the law and in light of his prior affirmations.  Further, Defendant's ineffective assistance of counsel claim is not suitable for direct appeal.  The record lacks defense counsel's reasons for his strategic decision-making, and Defendant cannot demonstrate prejudice, as his counsel secured dismissal of other charges and a sentence significantly below the applicable Sentencing Guidelines range.

---

[1] The United States' answering brief is due on July 7, 2025.  This motion stays the briefing schedule.  Ninth Cir. R. 27-11.  This is the government's first motion to dismiss.  Ninth Cir. R. 27-8.1.  According to the Bureau of Prisons, Defendant is in custody serving his sentence, with a release date of October 20, 2026.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On November 14, 2022, Defendant knowingly and voluntarily entered into a plea agreement.  (ER 45-57.)[2]  Through the plea agreement, Defendant pled guilty to Conspiracy (Count One), in violation of 18 U.S.C. § 371, and Felon in Possession of a Firearm (Count Two), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ER 45-57.)  The plea agreement was negotiated with the United States and afforded Defendant numerous benefits, to include dismissal of ninety-six counts, an agreement to not charge Defendant for other offenses, a sentencing cap to the low-end of the applicable guideline range, and a stipulation that his prison terms be run concurrently.  (ER 46-48.)  To obtain these benefits, Defendant agreed to waive his right to appeal or challenge the information, conviction, and sentence.  (ER 48.)

On January 21, 2025, Defendant received the benefit of this bargain:  a below-guidelines sentence in accordance with the terms of his plea agreement.  (ER 46-47.) Nevertheless, Defendant has appealed and asserts, for the first time on appeal, that he was "actually innocent" of Count Two.  (Op. Br.  9-10.)

Defendant's argument lacks legal and factual merit and should be rejected. This Court has never recognized such a doctrine for avoiding a valid appellate

---

[2] "ER" refers to the Excerpts of Record, followed by the relevant page number(s). References to the Presentence Investigation Report ("PSR") are followed by the appropriate paragraph numbers.  This Court's docket reflects that the PSR was provided by the defendant to the Clerk of the Court under seal via the Ninth Circuit Appellate ECF system.  "Ex." refers to the exhibits filed with this motion.

2

waiver, and it should decline Defendant's invitation to invent it here. Moreover, Defendant is not "actually innocent." Before possessing these firearms, Defendant was convicted of felonies not just in multiple different states, but also in federal court. Under the clear language of the statute, and binding Supreme Court precedent, his right to possess a firearm could not have been restored. Moreover, even if it could have been, this Court has never held that a defendant's knowledge of the illegality of possession is an element of this offense. To the contrary, the Supreme Court and this Court have stated otherwise. And on its face, Defendant's claim of not possessing the requisite *mens rea* necessary to commit Count Two strains credulity, as it contradicts his prior statements to the court. It is also beyond belief because Defendant possessed, among other firearms, a *fully automatic weapon*; he never had any right to possess such a firearm that could have been restored.

Thus, this Court should enforce the parties' appellate waiver. The United States gave Defendant substantial benefits as part of the plea agreement and, in exchange, Defendant waived his right to appeal. Defendant acknowledged the appellate waiver during the change of plea hearing, which complied with Rule 11 in all respects, and he was reminded about his appellate waiver during his sentencing hearing. The United States should likewise receive the benefit of its bargain.

Lastly, Defendant's claim of ineffective of assistance of counsel should be dismissed on direct appeal, as the record is not developed, and no exception applies.

3

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     Indictment and Search of Defendant's Residence

On December 14, 2021, Defendant and his co-conspirators were indicted for obtaining over $5 million in pandemic relief funds from the United States, and others, through fraudulent means. (PSR ¶ 15.) Defendant was arrested on December 16, 2021, and his residence was searched pursuant to a search warrant. (ER 90; PSR ¶ 20.) During the search of Defendant's residence, agents seized 7,552 rounds of ammunition, firearm parts and accessories, and 13 firearms, including a conversion device. (PSR ¶ 20.)

### B.     Detention Hearing

On January 6, 2022, a Magistrate Judge held a detention hearing for Defendant. (Ex. 1.) Secret Service Agent Jon Carroll testified that 13 operating firearms, to include two assault rifles, a combat shotgun, and a Glock handgun that had been converted to a fully automatic weapon, were discovered at Defendant's residence. (Ex. 1 at 5-14.) Agent Carroll identified photographs taken of the weapons. (Ex. 1 at 17; Ex. 2 and 3 (Detention Hearing Photo Exhibits).

At the detention hearing, and through defense counsel, Defendant denied ownership of the firearms and claimed the firearms were owned by a third-party. (Ex. 1 at 25-26.) Defendant also personally addressed the court by stating: "I mean,

4

I have significant proof I need access to those guns to defend myself." (Ex. 1 at 31-32.)

After hearing arguments, the Magistrate Judge detained Defendant as a danger to the community. (Ex. 1 at 30-31.)

### C.    The Information and Plea Agreement

On November 14, 2022, Defendant was charged with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 371, and Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), through an information. (ER 80-83.) Along with the filing of the information, Defendant pled guilty to both counts through a plea agreement. (ER 45-57.)

The plea agreement was negotiated by defense counsel and afforded numerous benefits to Defendant. Specifically, the plea agreement capped Defendant's sentencing exposure to no greater than the low-end of the sentencing guidelines range. (ER 45-46.) The plea agreement stipulated the guideline loss was between $250,001 and $550,000. (ER 46.) The plea agreement stipulated the two-level upward adjustment for sophisticated means would not apply. (ER 46.) The plea agreement required Defendant's prison terms to be run concurrently. (ER 46.) The plea agreement reduced Defendant's offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. (ER 47-48.) The plea agreement required dismissal of the 96-counts in the indictment against Defendant. (ER 48.) And the plea agreement

5

limited prosecution of Defendant for any other wire fraud offenses known by the U.S. Attorney's Office as of June 25, 2022.  (ER 48.)

To obtain these significant benefits, Defendant agreed to waive any challenges to the charging document and, absent limited circumstances, any right to challenge his conviction and sentence.  (ER 49.)  Defendant agreed that his waiver would "result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction … or sentence in this case."  (ER 49.)

The plea agreement set out the elements for Felon in Possession of a Firearm as:

1. The defendant knowingly possessed a firearm;
2. The firearm had been shipped or transported from one state to another or from a foreign country to the United States; and
3. At the time the defendant possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

(ER 53.)

The plea agreement set forth the factual basis for the charge and identified two of Defendant's prior felony convictions as reasons for his prohibited status:

> Separately, on December 16, 2021, I unlawfully possessed or controlled a Glock Model 19 9X19 mm caliber submachinegun (serial #TKH171), which had been previously shipped and transported in interstate commerce.  At the time I possessed or controlled the Glock, I was aware that I had been previously convicted of Felon in Possession of a Firearm (CR08-0496-PHX-ROS), a felony, on February 5, 2009, in the District of Arizona.  I was also aware that I had been previously convicted of Conspiracy to Commit Possession of Marijuana for Sale (CR2011-

6

163886-001-DT,) a class 2 felony, on August 13, 2013, in Maricopa County, Arizona.

(ER 54-55.)

The plea agreement also contained avowals from Defendant that he read the entire agreement, that he understood each of its provisions, and that he voluntarily agreed to it. (ER 55.)

### D.    The Change of Plea Hearing

Defendant pled guilty to the charges at a November 16, 2022, hearing. During the hearing, Defendant established he had a clear mind and was competent to plead guilty. (ER 64.) Defendant promised to tell the truth and acknowledged he could be charged with making a false statement or perjury if he made a false statement under oath. (ER 63-64.) Defense counsel affirmed he reviewed the plea agreement and charging documents with Defendant on at least three occasions and answered Defendant's questions. (ER 65.)

Defendant, in turn, affirmed he had sufficient time to review the plea agreement before signing it and that his defense counsel had answered his questions. (ER 65-66.) Defendant affirmed no one had forced or threatened him to enter into the plea agreement and that he was voluntarily pleading guilty. (ER 66.)

The Magistrate Judge then reviewed the elements of each count with Defendant. (ER 67.) Defendant confirmed the felon in possession count required the United States to prove he "knowingly possessed a firearm that had been shipped

or transported from one state to another or from a foreign country to the United States, and that at the time that [he] possessed the firearm, [he] knew that [he] had been convicted of a crime punishable by imprisonment for a term exceeding one year." (ER 67-68.)

The Magistrate Judge reviewed the waiver of defenses and appeal rights with Defendant. (ER 73.) Defendant acknowledged, if he were to proceed with the plea agreement, that he would be "giving up or waiving [his] right to appeal or collaterally attack [his] conviction and sentence…." (ER 73.)

The Magistrate Judge also reviewed the factual basis of the plea with Defendant, which he agreed was true. (ER 76-77.) Defendant acknowledged, under oath, he unlawfully possessed a Glock Model 19 sub-machine gun that had been shipped and transported in interstate and foreign commerce. (ER 77.) Defendant also acknowledged he knew he had been convicted of felonies, punishable by more than one year of prison, in both federal and Arizona state court. (ER 77.)

Based on representations from Defendant and defense counsel, the Magistrate Judge found Defendant had knowingly, intelligently, and voluntarily entered a plea of guilty, Defendant understood the charges, and there was a factual basis to support the guilty pleas to Counts One and Two. (ER 78.)

The Magistrate Judge issued written findings on November 16, 2022, noting Defendant understood the nature and element of the offenses, the plea of guilty was

8

knowingly and voluntarily made, and there was a factual basis for the plea agreement. (ER 59-60.) The Magistrate Judge set a 14-day filing deadline for objections or supplements to the guilty plea proceedings. (ER 60.) No objections were filed by Defendant.

### E.    **Sentencing Hearing**

The PSR calculated Defendant's offense level consistent with adjustments for acceptance of responsibility and multiple counts. (PSR ¶¶ 55-62.)

The PSR found Defendant's criminal history to be Category II. (PSR ¶ 70.) The PSR set out Defendant's extensive criminal history, which included prior felony convictions for state Grand Larceny (New York) in 1998, federal Felon in Possession of a Firearm (District of Arizona) in 2009, and state Conspiracy to Possess Marijuana for Sale (Arizona) in 2013. (PSR ¶¶ 64, 66-67.) In Defendant's 2009 federal firearm conviction, he purchased and possessed firearms using a false date of birth and other false statements. (PSR ¶ 66.) In a somewhat similar allegation as presented here on appeal here, Defendant claimed he believed his prior felony plea agreement permitted him to possess firearms. (PSR ¶ 66.)

Defendant did not object to any of the paragraphs in the PSR.

1.    *Defendant argued his subjective as a mitigating fact.*

During the sentencing hearing, defense counsel argued Defendant collected firearms as an investor and for protection. (ER 15.) Defense counsel argued

9

Defendant believed his right to own firearms had been restored when a New York attorney assisted him to obtain "a relief from disabilities." (ER 15.) Defendant also purportedly hired an Arizona attorney to set aside his state conviction for Conspiracy to Possess Marijuana for Sale. (ER 15-16.) And, despite not receiving any communications from the Arizona attorney, defense counsel alleged Defendant believed his rights had been restored because he received an Arizona voter card. (ER 16.)

Defendant then spoke to the court and alleged he believed his rights had been restored. (ER 24.)

In meting out the criminal sentence, the district court found the total offense level to be 22 with an advisory guideline range of 46-57 months of imprisonment. (ER 11.) The district court considered Defendant's "good-faith attempts to comply with the law, particularly on the gun charge," as support for a downward variance. (ER 33.) Notably, the court *did not* make a finding that Defendant possessed a good faith belief that his rights had been restored. (*See id.*) The court varied downward and imposed 36 months of imprisonment for both the Conspiracy and Felon in Possession counts, to be served concurrently, as the plea agreement stipulated. (ER 34.) The court advised Defendant he had waived his right to appeal or collaterally attack the conviction or sentence imposed. (ER 37.) And the court found

10

Defendant had knowingly, intelligently, and voluntarily waived his right to appeal. (ER 37.)

## III.   ARGUMENT

### A.   <u>Standard of Review</u>

This Court reviews *de novo* the validity of an appeal waiver. *United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007). Defendant's claim that his guilty plea was not made knowingly and voluntarily is subject to plain error review, as he failed to raise it before the district court. *United States v. Jimenez-Dominguez*, 296 F.3d 863, 866 (9th Cir. 2002). To establish plain error, Defendant must show (1) error; (2) that is plain; and (3) that affects substantial rights. *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009). Even if Defendant makes these showings, this Court will only exercise its discretion to notice a forfeited error if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

### B.   <u>Defendant Knowingly and Voluntarily Waived His Right to Appeal</u>

There is no constitutional right to appeal. *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). A defendant's waiver of appellate rights is enforceable if made knowingly and voluntarily and if the language of the waiver covers the grounds raised on appeal. *Watson*, 582 F.3d at 986; *Bibler*, 495 F.3d at 623-24. Where an appeal raises issues encompassed by a valid waiver, the appeal generally must be dismissed. *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir. 2011).

11

This Court "regularly enforces 'knowing and voluntary' waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas." *Anglin*, 215 F.3d at 1066. "The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement." *Watson*, 582 F.3d at 986. To determine if a defendant agreed to an appellate waiver knowingly and voluntarily, the Court will "look to circumstances surrounding the signing and entry of the plea agreement." *United States v. Buchanan*, 59 F.3d 914, 917 (9th Cir. 1995). This Court will also consider "whether the district court informed the defendant of [his] appellate rights and verified [his] intent to forfeit them." *Anglin*, 215 F.3d at 1066.

Here, Defendant agreed to waive "any and all motions, defenses … and objections" to the indictment or information and "any right to file an appeal … that challenges [his] conviction …, the entry of judgment against the defendant, or any aspect of the defendant's sentence" in his negotiated plea agreement. (ER 49.) Defendant also agreed that "[t]his waiver shall result in the dismissal of any appeal, collateral attack, or other motion, the defendant might file challenging the conviction … or sentence in this case." (ER 49.)

As laid out above, the change of plea hearing comported with all the requirements of Federal Rule of Criminal Procedure 11. (ER 63-78.) Defendant confirmed his understanding of the appellate waiver and affirmed he was willing to

give up his right to appeal or collaterally attack his conviction and sentence. (ER 73.) Defendant did not object or supplement the Magistrate Judge's findings—such as asserting a belief of having his gun rights restored—even when given an opportunity to do so. (ER 59-60.) Finally, Defendant affirmed his understanding of the waiver during sentencing and the district court found Defendant to have knowingly and voluntarily waived his right to appeal. (ER 37-38.)

Thus, Defendant's appeal of his conviction under Count Two should be dismissed, as he knowingly and voluntary waived his right to appeal.

### C.      No Exceptions Apply to Defendant's Waiver of Appeal

A waiver of the right to appeal will not be enforced if the guilty plea does not comply with Rule 11, the sentencing judge informs the defendant that he retained the right to appeal, the imposed sentence does not comply with the terms of the plea agreement, or the sentence violates the law. *Bibler*, 495 F.3d at 624. Although these circumstances did not occur here, Defendant claims his appellate waiver should not be enforced as he is "actually innocent" of the charge. (Op. Br. 9-10.) Defendant's "actual innocence" claim lacks legal and factual merit and should not serve as a basis to set aside his guilty plea.

This Court has never recognized an "actual innocence" claim as one that negates a valid waiver of the right to appeal in a plea agreement. *See United States v. Anderson*, 2019 WL 359314, at *6 (E.D. CA. Jan. 29, 2019) (collecting cases,

13

noting "district courts in this circuit that have considered this potential exception have not found authority to support it," and concluding "movant has not established that an 'actual innocence' exception to an otherwise enforceable appeal waiver exists"). It does not. Rather, a claim of "actual innocence" is a "procedural gateway" under which courts may "excuse [a defendant's] procedural default" in raising a constitutional claim in habeas. *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007). *See also Schlup v. Delo*, 513 U.S. 298, 315 (1995) ("Schlup's claim of innocence does not by itself provide a basis for relief. . . . Schlup's claim of innocence is thus not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.") (internal quotations omitted).[3]

The out-of-circuit cases on which Defendant relies fail to support recognition of such an exception, and certainly not on direct appeal, outside the habeas context in which the doctrine has any application. *See United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016); *United States v. Torres-Oliveras*, 583 F.3d 37, 42-43 (1st Cir. 2009). For instance, the *Adams* case is inapposite, as it relates to a Section

---

[3] Even if the Court imported the "actual innocence" doctrine into this inapposite context for the first time, Defendant would then have to demonstrate "it is more likely than not that no reasonable juror would have convicted him" considering the evidence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). And since Defendant pled guilty, he would also have to show he is "actually innocent" of any other serious charges that the government passed upon in exchange for the plea of guilty plea. *Id.* Here, Defendant does, and can do, neither.

2255 collateral attack on a felon in possession conviction and a defendant who was no longer a convicted felon under state law. *Adams*, 814 F.3d at 183-84.

*Torres-Oliveras* is even further afield. In fact, it affirmatively undermines Defendant's argument and counsels for dismissal of this appeal for Defendant to pursue any such arguments in habeas. *See Torres-Oliveras*, 583 F.3d at 42-43. There, the defendant did not claim actual innocence. Instead, he claimed his counsel was ineffective for having him accept a plea agreement to powder instead of crack cocaine. *Id.* at 42. The court noted it may relieve a defendant of his appellate waiver if there were a miscarriage of justice because of ineffective assistance of counsel. *Id.* The court also explained the exception is applied "sparingly and without undue generosity" and "requires a strong showing of innocence, unfairness, or the like." *Id.* at 43 (quoting *United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006)).

The First Circuit ultimately dismissed the appeal, finding the defendant to have knowingly and voluntarily waived his right to appeal and that enforcing the appellate waiver would not result in a miscarriage of justice. *Id.* The court also denied the defendant's request for direct review of his ineffective of assistance of counsel claim due to the "factual ambiguities surrounding the defense attorney's performance," stating that a collateral proceeding under Section 2255 was the proper

mechanism for review of the ineffective of assistance of counsel claim. *Id.*[4]

Defendant's "actual innocence" claim also fails scrutiny as the law is clear that, with respect to his prior federal felony conviction, no attorney could have "restored" his right to possess firearms or ammunition under federal law. The United States Supreme Court has held that the right to possess firearms or ammunition under federal law can only be restored pursuant to federal law. *Beecham v. United States*, 511 U.S. 368, 372 (1994). Unlike civil rights, the States may not restore federal firearms rights. *Id.* Indeed, the only effective way to obtain restoration of the right to possess firearms following a federal felony is through a presidential pardon, which Defendant makes no claim he ever thought he obtained.[5]

Defendant nevertheless claims he misunderstood the essential elements of the crime by claiming—for the first time on appeal, in a page-long footnote—that "the prosecution has the affirmative burden during its case-in-chief to disprove beyond a

---

[4] Defendant's Ninth Circuit cases likewise lend no direct support to creating an "actual innocence" exception to a valid waiver of appeal. *See United States v. Jacobo Castillo*, 496 F.3d 947, 956 (9th Cir. 2007) (en banc) (holding Court retains jurisdiction to adjudicate a defendant's appeal even with the entering of a plea agreement with an appellate waiver); *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir. 2011) (dismissing defendant's direct appeal as he waived the right to appeal in his plea agreement).

[5] Nor could New York or Arizona have restored the right to possess firearms based on felonies committed in the other state, as whether civil rights restoration removes a felony from the definition applicable to Section 922(g) is "determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20).

reasonable doubt a defendant's good-faith belief that his civil rights had been restored at the time that he possessed the firearm." (Op. Br. at 14 n.4.) Defendant cites no case making that holding. *Rehaif* states otherwise, holding the government must prove "defendant knew he possessed a firearm and that he knew he belonged to a relevant category of persons barred from possessing a firearm" under 18 U.S.C. § 922(g). *Rehaif v. United States*, 588 U.S. 225, 237 (2019). The government need only prove Defendant knew his "prior conviction was punishable by more than one year of imprisonment." *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020). The government was not required to prove Defendant was aware his status prohibited firearm ownership or possession. *Id.*

Defendant's prior statements and affirmations to the district court likewise undermine his "actual innocence" claim. Shortly after charging, Defendant did not claim ownership of the firearms in his residence with a belief of lawful possession. Instead, Defendant denied ownership of the firearms outright and claimed an unidentified third-party was the true owner. (Ex 1 at 25-26.)

Defendant's "actual innocence" claim is further diminished by his guilty plea to unlawful possession of a sub-machine gun—a fully automatic weapon. In the factual basis to his plea agreement, Defendant admitted that he "unlawfully possessed or controlled a Glock Model 19 9X19 mm caliber submachinegun." (ER 54-55.) No restoration of rights could have granted Defendant permission to

17

possess such a firearm; absent compliance with stringent regulations and licensing, which Defendant has never claimed to have complied with, it is illegal for anyone to possess a machinegun. *See* 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. 5845(b). The notion that Defendant had a good faith belief he could hold firearms because his rights were restored is simply untenable for a man possessing a submachinegun.

Defendant's guilty plea was made through a written plea agreement and under oath in open court and comprehended "all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). Defendant's admission that his machinegun possession was unlawful should be credited as accurate, as statements made at the plea colloquy carry a strong presumption of truth. *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012), *as amended* (May 31, 2012) (internal citations omitted). Thus, Defendant's admission in court that he possessed the machinegun *unlawfully* is dispositive and undermines his appellate claim of lawful possession.[6]

For these reasons, this Court should decline to invent a new exception to a valid appellate wavier and dismiss Defendant's appeal.

---

[6] To the extent Defendant argues there was an affirmative defense he might have raised, there was no requirement that he be so advised for his guilty plea to be knowing and voluntary. *See Mitchell v. Scully*, 746 F.2d 951, 956 (2nd Cir. 1984) (holding, as to affirmative defenses, "due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed").

**D.**  <u>**Defendant's Ineffective Assistance Claim Should Be Dismissed**</u>

Defendant's claim of ineffective assistance of counsel should be raised in a collateral attack motion and not on direct appeal. Generally, this Court will not review ineffective of counsel claims on direct appeal. *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). Deferring such claims reflects this Court's concerns that it might "become engaged in the perilous process of second-guessing" when a record is not fully developed. *Id.* at 1156 (quoting *United States v. Birges*, 723 F.2d 666, 670 (9th Cir. 1984)). Deciding whether to defer consideration of an ineffective assistance of counsel claim is discretionary. *United States v. Miskinis*, 966 F.2d 1263, 1269 (9th Cir. 1992). This Court set out two limited exceptions: when the record "is sufficiently developed" or when an attorney's performance is "so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Jeronimo*, 398 F.3d at 1156.[7]

---

[7] Defendant proposes this Court create a third exception to the general rule, which involves remanding a "colorable" claim back to the trial court to conduct an evidentiary hearing to develop a record on trial counsel's performance. This Court should decline to create such an exception. Once Defendant's direct appeal is resolved, he will have ample opportunity to pursue an ineffective assistance of counsel claim through a Section 2255 motion. Creating a third exception would, invariably, lead to additional claims of ineffective assistance of counsel being raised on direct appeal, adding to the burden of work on this Court when there is already a process in place to collaterally attack ineffective of assistance of counsel claims and to develop the trial record for such a claim.

19

Neither exception applies here. The record reflects defense counsel's sentencing argument on the alleged circumstances of Defendant's possession of his firearms. The record lacks defense counsel's reasons for asserting Defendant's alleged beliefs as sentencing mitigation. Given the law and Defendant's disavowal of his ownership of the firearms, it is entirely possible that defense counsel did not believe advancing Defendant's claims to a jury was strategically sound.

Further, Defendant's claim of prejudice cannot withstand scrutiny, as the record reflects excellent advocacy by defense counsel. Through defense counsel's efforts, Defendant received a plea agreement that dismissed 96 charges in the indictment, spared him from additional charges, and significantly reduced his sentencing exposure. In fact, if defense counsel had claimed Defendant could not be found guilty of Felon in Possession of a Firearm because of some alleged subjective belief, Defendant could have been charged with Illegal Possession of a National Firearms Act weapon, in violation of 26 U.S.C. § 5861(d), and faced the same sentencing guideline under U.S.S.G. § 2K2.1.

Thus, there is no basis for setting aside a knowing and voluntary waiver of appeal to hear an ineffective of assistance of counsel claim outside the normal course of habeas proceedings.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's appeal should be dismissed.

Respectfully submitted this 27th day of June, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

WILLIAM VOIT
Appellate Division Chief

*s/ Raymond K. Woo*
RAYMOND K. WOO
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Attorneys for Plaintiff-Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

1.      This motion complies with the length limits permitted by Ninth Circuit Rule 27-1(d) because it does not exceed 20 pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Raymond K. Woo*
RAYMOND K. WOO
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Attorneys for Plaintiff-Appellee

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Tammie R. Holm*
Tammie R. Holm
Paralegal Specialist
