No. 25-463

# In the
# United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GERALD BLAISE II,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Arizona
No. 2:21-cr-01028-MTL-4

## APPELLANT'S MOTION FOR *EN BANC* RECONSIDERATION OF THE MOTIONS PANEL'S ORDER DISMISSING APPELLANT'S APPEAL

Brent Evan Newton
Attorney at Law
19 Treworthy Road
Gaithersburg, Maryland 20878
(202) 975-9105
brentevannewton@gmail.com

**Appointed Counsel for Appellant
Gerald Blaise II**

## <u>RULE 35 CERTIFICATION</u>

Undersigned counsel makes the following certification pursuant to Federal Rule of Appellate Procedure 35(b)(1)(B) and Ninth Circuit Local Rule 35-1:[1]

This criminal case raises issues of exceptional importance that should be addressed by the en banc Ninth Circuit:

1. Whether the motions panel properly concluded that appellant's guilty plea was voluntary and intelligent when the record clearly reveals that appellant was erroneously led to believe that he was guilty of violating 18 U.S.C. § 922(g)(1) even though, at the time that he possessed the firearm, he honestly but mistakenly believed that his civil rights had been restored.

2. Whether the motions panel erred by concluding that a defendant's actual innocence of the offense of conviction is not an exception to general rule requiring enforcement of a waiver-of-appeal provision in a plea agreement.

3. Whether the motions panel contravened *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994), and *United States v. Gonzalez*, 981 F.2d 1037, 1038 (9th Cir. 1992), by addressing the merits of appellant's substantial claims that his guilty plea was constitutionally invalid and that he is actually innocent rather than referring his case to a merits panel to afford plenary consideration of those substantial issues.

4. Whether, at the very least, this Court should hold this motion in abeyance pending the en banc Court's decision in *United States v. Atherton*, 21-30266 (9th Cir.), as that decision may be relevant to the issue raised in appellant's case.

/s/ *Brent Evan Newton*

Brent Evan Newton

---

[1] This motion for *en banc* reconsideration is being filed in accordance of Ninth Circuit General Order 6.11 (Rev. 9/17/14), which provides in pertinent part: "Any motion or petition seeking en banc review of an order issued by a motions or oral screening panel shall be processed as a motion for reconsideration en banc."

i

## <u>TABLE OF CONTENTS</u>

RULE 35 CERTIFICATION..…………………………………………………i

TABLE OF AUTHORITIES…………………………………………...iii

STATEMENT OF THE CASE.……………………………………………1

REASONS FOR GRANTING RECONSIDERATION EN BANC……………….6

CONCLUSION……………………………………………….....15

RULE 11 CERTIFICATION…………………………………………..16

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Beecham v. United States,*
  511 U.S. 368 (1994) ...................................................................7, 9

*Bousley v. United States,*
  523 U.S. 614 (1998) ...................................................................9, 13

*Brady v. United States,*
  397 U.S. 742 (1970) ......................................................................8

*Gates v. United States,*
  2022 WL 2872242 (W.D. Wash. July 21, 2022)................................8

*Greer v. United States,*
  593 U.S. 503 (2022) .......................................................................7

*North Carolina v. Alford,*
  400 U.S. 25 (1970) .......................................................................10

*Rehaif v. United States,*
  588 U.S. 225 (2019) ...............................................................6, 7, 9

*United States v. Adams,*
  814 F.3d 178 (4th Cir. 2016) .......................................................13

*United States v. Andis,*
  333 F.3d 886 (8th Cir.2003) .........................................................12

*United States v. Atherton,*
  134 F.4th 1009 (9th Cir. 2025).....................................................15

*United States v. Bruce,*
  394 F.3d 1215 (9th Cir. 2005) ........................................................9

*United States v. Flower,*
  29 F.3d 530 (10th Cir. 1994) ..........................................................7

*United States v. Gil-Quezada,*
  445 F.3d 33 (1st Cir. 2006) ..........................................................13

*United States v. Gonzalez,*
  981 F.2d 1037 (9th Cir. 1992) ..................................................1, 14

*United States v. Goodall,*
  21 F.4th 555 (9th Cir. 2021) ........................................................13

*United States v. Harris,*
  628 F.3d 1203 (9th Cir. 2011) .....................................................13

*United States v. Jacobo Castillo,*
  496 F.3d 947 (9th Cir. 2007)........................................................13

*United States v. Mason*,
343 F.3d 893 (7th Cir. 2003) ...................................................................12

*United States v. Michlin*,
34 F.3d 896 (9th Cir. 1994) ................................................................1, 14

*United States v. Mueller*,
11 Fed. App'x 707 (9th Cir. 2001) ..........................................................12

*United States v. Peterson*,
995 F.3d 1061 (9th Cir. 2021) ................................................................11

*United States v. Portillo-Cano*,
192 F.3d 1246 (9th Cir. 1999) ................................................................12

*United States v. Robinson*,
982 F.3d 1181 (8th Cir. 2020) ..................................................................8

*United States v. Sjodin*,
139 F.4th 1188 (10th Cir. 2025) ...............................................................8

## Statutes

18 U.S.C. § 371 .............................................................................................1
18 U.S.C. § 921(a)(20) ..........................................................................6, 7, 8, 9
18 U.S.C. § 922(g)(1) .............................................................................. passim
18 U.S.C. § 924(a)(2) ...................................................................................2, 6, 7
18 U.S.C. § 1152 ...........................................................................................9
18 U.S.C. § 2252 .........................................................................................11

## Rules

Federal Rule of Appellate Procedure 35(b)(1)(B)......................................1

## **STATEMENT OF THE CASE**

### I.     **Procedural Background**

On November 14, 2022, an information was filed in the U.S. District Court for the District of Arizona, charging appellant with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 371 & 1957 (Count One); and having possessed a firearm as a person previously convicted of an offense punishable in excess of one year, in a violation of 18 U.S.C. § 922(g)(1) (Count Two) (ER-80). On the same day, November 14, 2022, appellant pleaded guilty to those two offenses pursuant to a written plea agreement (ER-45, ER-62).  On January 21, 2025, the district court sentenced appellant to 36 months in prison, to be followed by a three-year term of supervised release, and also $403,253 in restitution and a $200 special assessment.  (ER-33-35.)

After appellant filed his opening brief on direct appeal, the government moved to dismiss the appeal based on the waiver-of-appeal provision in his plea agreement. Appellant filed a response in opposition to that motion, which contended that the waiver provision did not apply.   On September 4, 2025, a motions panel granted the government's motion and dismissed the appeal.  *See* **Appendix.**

### II.     **Statement of the Facts**

Count Two of the information – the only charge and conviction at issue on appeal – alleges that:

On or about December 16, 2021, in the District of Arizona, the defendant, GERALD BLAISE II, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, that is, a Glock Model 19, 9X19 mm caliber submachinegun (serial #TKHl 71), said firearm having been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(2).

(ER-81.)

In the plea agreement, appellant stipulated that:

. . . [O]n December l6, 2021, I unlawfully possessed or controlled a Glock Model 19, 9Xl 9 mm caliber submachinegun (serial # TKHl71), which had been previously shipped and transported in interstate commerce. At the time I possessed or controlled the Glock, I was aware that I had been previously convicted of Felon in Possession of a Firearm (CR08-0496-PHX-ROS), a felony, on February 5, 2009, in the District of Arizona. I was also aware that I had been previously convicted of Conspiracy to Commit Possession of Marijuana for Sale (CR2011-163886-001-DT,) a class 2 felony, on August 13, 2013, in Maricopa County, Arizona.

(ER-54-55.)

The plea agreement also contained the following "elements" of Count Two:

**Count 2: Felon in Possession of a Firearm**

On or about December 16, 2021, in the District of Arizona:

1. The defendant knowingly possessed a firearm;

2. The firearm had been shipped or transported from one state to another or from a foreign country to the United States; and

2

3. At the time the defendant possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

(ER-53).

At the rearraignment, the court advised appellant about the "elements" of 18 U.S.C. § 922(g)(1) as follows:

. . . [Y]ou knowingly possessed a firearm that had been shipped or transported from one state to another or from a foreign country to the United States, and that at the time that you possessed the firearm, you knew that you had been convicted of a crime punishable by imprisonment for a term exceeding one year.

(ER-66-67.)  Appellant affirmatively answered when the court asked him whether he understood the elements (ER-67).

Thereafter, at sentencing, in making an argument for reduced sentence, appellant's former counsel revealed that appellant had possessed the firearms under the honest but mistaken belief that his civil rights had been restored (and, thus, his mistaken belief that he was permitted to possess them lawfully):

Your Honor, I know . . . that the charges are – are serious and[,] . . . I get that.  And I've handled plenty of weapons violations in federal court before.  But of all the cases that I've ever handled, I am truly, truly sympathetic to – to Mr. Blaise.  *I have never seen a worse case of mistake of fact [and] law combined together.  And I know that those are not a defense.*  And he ultimately made the decision, recognizing that, that he would accept the government's plea agreement in this particular case.  But I do think it does create major mitigation in this case, because this wasn't a situation where he completely failed and disregarded the law.  . . .

3

[H]e's always had a like for firearms. Fascinated by firearms. He collected them. He looked at them as an investment. He also looked at them to protect himself. During the financial collapse, he felt that both of those things would be potentially a good investment, like a lot of people did at that time. Firearms sales went up. He was part of that. **But before he did that, he thought, well, I need to get my rights restored.**

He . . . hired an attorney in New York, who got him a – a relief from disabilities, but he didn't read the fine print. New York doesn't restore your gun rights. All that does is restore your voting rights, and it wasn't enough. So there already was his mistake of fact [and] law.

Then he did the same thing here . . . Arizona. He retained an attorney. That attorney, he signed the fee agreement; provided all the documentation that was required from that attorney. There's currently an ongoing bar complaint as a result of that, because that attorney had indicated to him that, hey, I took care of it.

And one of the conversations specifically was: When you get the set-aside, that's also going to restore your gun rights. That's correct law. I practice as well in state court. The type of offense that he had, the possession of marijuana for sale, if he had gotten a set-aside, it would have restored his gun rights. So that – that statement was correct. And then he also indicated to him: You'll know when it goes through because, you know, your voting rights will come back and all that other stuff.

So Mr. Blaise said okay. Didn't hear anything from [the attorney]. [Mr. Blaise] started to bug [the attorney] a little bit. Sent him messages saying: Hey, I haven't heard from you. What's going on? The attorney never responded. Just for whatever reason went silent.

Then [Mr. Blaise] gets in the mail his voter card from Arizona saying, hey, your right to vote has been restored. **He assumed everything was fine.** He didn't follow up. That was his huge mistake. Because if he had gone on – gone online, he would have seen that no – no motion was ever filed. **But when he did get his voter registration card, he thought, okay, I'm good. [He then] [p]urchases all these firearms.**

4

. . . He purchased those firearms. ***He thought everything was on the up and up, that this was a legal transfer***. He paid money for it like it was a legal transfer. . . .

. . . When he found out as a result of this case – so I remember doing research at the very beginning during the detention hearing when this case first started, and I had to tell him the bad news. New York didn't restore your – you know, your gun rights, and you still have this Arizona thing going on.

He said: No, no. I hired an attorney. Well, lo and behold, that attorney didn't do anything. And there's a current bar complaint going on right now with that attorney. He's already had to refund Mr. Blaise. The refund doesn't help him. The unfortunate situation is this entire time he was a prohibited possessor. So I think that makes a huge impact from somebody who just ignores the law versus somebody who at least makes some efforts. . . . [H]e didn't go out to just possess firearms willy-nilly but at least ***made some efforts to make sure he was good before he did that*** . . . .

ER-11-20 (emphasis added).

Appellant then made the following statement:

At the onset of COVID . . . pandemic, when the world was at a state of fear and uncertainty, my objective was to protect my family and ensure their safety. So . . . October 19th, 2020, I hired . . . a lawyer to . . . begin the process of having my rights reinstated, which at the time ***I honestly believe that this had – that this matter had been resolved***. I now understand that this was not the case, and I deeply regret the mistakes – I deeply regret my misunderstanding . . . of the law.

ER-24 (emphasis added).

The district court then stated:

I do think it's appropriate, given ***what I do want to credit as*** . . . ***your good-faith attempts to comply with the law . . . on the gun charge***, and what sounds like might be a victimization of you by your lawyers who did not provide you effective legal counsel. However, at the end of the day, I do think that the prudent approach would be to not have had those

5

. . . weapons until you had definitive confirmation that you did have your Second Amendment rights restored. So this sentence does recognize a deviation or a variance for that argument [by your defense counsel].

ER-33-34 (emphasis added).

In his opening brief and also in his response to the government's motion to dismiss the appeal based on the waiver-of-appeal provision in the plea agreement, appellant contended that the provision was not enforceable for two reasons: (1) appellant's guilty plea was constitutionally invalid; and (2) appellant is actually innocent of the *mens rea* element of the § 922(g)(1) charge. The motions panel rejected both of those arguments in a perfunctory manner in a single paragraph. **Appendix A**.

## REASONS FOR GRANTING RECONSIDERATION EN BANC

**Issue One**: **Appellant's Guilty Plea Was Constitutionally Invalid Because the Record Clearly Reveals That Appellant Was Led to Believe That He Was Guilty of Violating 18 U.S.C. § 922(g)(1) Despite Honestly But Mistakenly Believing that His Civil Rights Had Been Restored When He Possessed The Firearm.**

A defendant previously convicted of a felony offense but who honestly but mistakenly believes that his civil rights have been restored at the time that he possesses a firearm lacks the "knowing" *mens rea* required for conviction under 18 U.S.C. §§ 921(a)(2), 922(g)(1) & 924(a)(2). *See Rehaif v. United States*, 588 U.S.

225 (2019). In *Rehaif*, the Court held that 18 U.S.C. §§ 922(g)[2] & 924(a)(2)[3] requires the government to prove beyond a reasonable doubt that the defendant knew at the time of his possession that "he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 237; *see also Greer v. United States*, 593 U.S. 503, 505-06 (2022) ("In felon-in-possession cases after *Rehaif*, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew* he was a felon when he possessed the firearm.") (emphasis in original).

18 U.S.C. § 921(a)(20) excludes from the definition of "crime punishable by imprisonment for a term exceeding one year" – the technical definition of a "felony" – any conviction for which a defendant "has had [his] civil rights restored." Section 921(a)(20) "does not simply say that a person whose civil rights have been restored is exempted from § 922(g)'s firearms disqualification[;] [i]t says that the person's conviction 'shall not be considered a conviction.'" *Beecham v. United States*, 511 U.S. 368, 372 (1994). The "effect of postconviction events," such as restoration of rights, is therefore "one element of the question of what constitutes a conviction." *Id.*; *see also United States v. Flower*, 29 F.3d 530, 532 (10th Cir. 1994) ("18 U.S.C.

---

[2] Section 922(g) includes several different categories of persons prohibited from possessing firearms, including a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" may not possess a firearm that has traveled interstate. 18 U.S.C. § 922(g)(1).

[3] Section 924(a)(2) provides that, to be guilty of § 922(g), a defendant must "*knowingly* violate[]" the latter statute.

§ 921(a)(20) defines what prior felony convictions may be used as predicate convictions for a § 922(g)(1) offense."); *United States v. Robinson*, 982 F.3d 1181, 1186 (8th Cir. 2020) ("Pursuant to § 921(a)(20), a person who has been convicted of a felony but has had his rights restored does not actually have a qualifying conviction for § 922(g)(1) – and is therefore not in the relevant category of persons barred from possessing a firearm").

For that reason, because "[c]onvictions for which civil rights have been restored do not confer 'felon' status for purposes of the felon-in-possession statute, . . . if [a defendant] believed his rights had been restored [and that he could lawfully possess a firearm], that could negate scienter [under *Rehaif*]." *Gates v. United States*, No. C20-0446-JCC 2022 WL 2872242, at *1 (W.D. Wash. July 21, 2022); *see also United States v. Sjodin*, 139 F.4th 1188, 1199-1200 (10th Cir. 2025) (suggesting that a defendant who genuinely but mistakenly believed that his civil rights had been restored when he possessed a firearm is not guilty of a § 922(g)(1) charge under the reasoning of *Rehaif*); *Robinson*, 982 F.3d at 1186 ("After *Rehaif*, it may be that a defendant who genuinely but mistakenly believes that he has had his individual rights restored has a valid defense to a felon-in-possession charge under this provision.").

A conviction based on a guilty plea is constitutionally valid only if the plea was intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970).

Appellant's guilty plea to Count Two is invalid because, when he entered it, he was unaware that he was not guilty because he honestly but mistakenly believed that his civil rights had been restored when he possessed the firearm. The record is clear that the district court, counsel for the parties, and appellant all proceeded on the assumption that appellant had violated § 922(g)(1) by possessing a firearm when appellant honestly but mistakenly believed that his civil rights had been restored. By allowing appellant to plead guilty to § 922(g)(1) under those circumstances, the district court caused appellant's guilty plea to be involuntary. *See Bousley v. United States*, 523 U.S. 614, 618-19 (1998) ("[P]etitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proved, petitioner's plea would be . . . constitutionally invalid.").

The record shows that appellant was not informed of an alternative course of action based on his honest but mistaken belief that his civil rights had been restored when he possessed the firearm – namely, a plea of not guilty and a jury trial at which the prosecution would be required to prove beyond a reasonable doubt[4] that appellant

---

[4] Appellant contends that, based on both the Supreme Court's decision in *Beecham, supra*, and its subsequent decision in *Rehaif*, the prosecution has the affirmative burden during its case-in-chief to disprove beyond a reasonable doubt a defendant's good-faith belief that his civil rights had been restored at the time that he possessed a firearm. *See Beecham*, 511 U.S. at 372 (stating that § 921(a)(20) "does not simply say that a person whose civil rights have been restored is exempted from § 922(g)'s firearms disqualification[;] [i]t says that the person's conviction 'shall not be

9

did not honestly but mistakenly believe that his civil rights had been restored when he possessed the firearm. Such notice was required in order for appellant to have had a "voluntary and intelligent choice among the alternative courses of action open to [him]" in deciding whether to plead guilty or not guilty. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

As set forth *supra*, the record reflects that both appellant's defense attorney and the district judge were under the impression that appellant's honest but mistaken belief that his civil rights had been restored at the time that he possessed the firearm was solely a mitigating factor at sentencing. As explained above, that honest but mistaken belief is exculpatory under 18 U.S.C. §§ 922(g)(1) & 924(a)(2). For that reason, appellant's guilty plea was not intelligent and voluntary.

---

considered a conviction'" and that the "effect of postconviction events," such as restoration of rights, is therefore "one element of the question of what constitutes a conviction"); *Rehaif*, 588 U.S. at 227 ("We hold that the word 'knowingly' applies . . . to the defendant's [prohibited] status [under § 922(g)].").

Assuming *arguendo* that § 921(a)(20) is an affirmative defense, appellant still possessed an alternative course of action to pleading guilty – i.e., offering some defensive evidence (simply more than a scintilla) that appellant honestly but mistakenly believed that his civil rights had been restored when he possessed the firearm, which would have shifted the burden to the prosecution to disprove such a good-faith belief beyond a reasonable doubt. *Cf. United States v. Bruce*, 394 F.3d 1215, 1222-23 (9th Cir. 2005) (defendant's initial "burden of production" to prove the "affirmative defense" that he was an "Indian" under 18 U.S.C. § 1152, if met, shifted the ultimate burden to the prosecution to disprove that status beyond a reasonable doubt).

The motions panel erroneously assumed that appellant's guilty plea was voluntary because his attorney in the court below must have correctly advised about all the elements of § 922(g)(1). Despite its one-sentence, cursory treatment of appellant's substantial involuntariness claim, that erroneous assumption is clearly reflected in its citation to *United States v. Peterson*, 995 F.3d 1061, 1065-67 (9th Cir. 2021). In *Peterson*, another panel held that:

> . . . Peterson asserts that the district court failed to explain the Government's burden to prove that he knew the visual depiction was of a minor and that he knew the visual depiction showed the minor engaged in sexually explicit conduct. . . . Contrary to Peterson's contention, he was fully informed of the essential elements of the crime of receipt of child pornography [under] 18 U.S.C. § 2252 . . . . *Peterson affirmed in his plea agreement and to the court that he "ha[d] read the charges against him contained in the Indictment," discussed them with his attorney, who "fully explained" the charges, and that he "fully underst[ood] the nature and elements of the crime charged." The district court was entitled to rely upon Peterson's assurance that he understood the element of the crime to which he entered a guilty plea.*

*Peterson*, 995 F.3d at 1064-66 (emphasis added).

Unlike in *Peterson*, in which there was no indication in the record that the defendant-appellant in that case was actually innocent of the element that (he contended) was not explained to him when he pleaded guilty,[5] the record in the

---

[5] Indeed, the record reflected that the defendant in *Peterson* admitted to knowingly possessing child pornography depicting *prepubescent* minors. *See* Answering Brief of the United States, *United States v. Peterson*, No. 19-10246, 2020 WL 4004741, at *5*6 (9th Cir., filed July 6, 2020).

11

instant case affirmatively reflects that appellant is actually innocent of the *mens* rea element of § 922(g)(1).

The motions panel thus erred by assuming that appellant's former counsel had explained to appellant (before appellant pleaded guilty) that the prosecution had to prove beyond a reasonable doubt that appellant did *not* believe that his civil rights had been restored when he possessed the firearm. Significantly, the record permits only one conclusion: appellant's former counsel never explained to appellant that the prosecution was required to prove that mental state as an essential element of the charged offense under § 922(g)(1). ***Indeed, the record clearly shows that appellant's former counsel believed that appellant's honest but mistaken belief was merely a mitigating factor at sentencing***. ER-11-21. Therefore, appellant's guilty plea was necessarily not intelligent and voluntary and, thus, unconstitutional.

Although the plea agreement that appellant signed contains a waiver-of-appeal provision (ER-49), such a waiver does not foreclose appellant's challenge to his guilty plea as involuntary. *See United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999); *see also United States v. Mueller*, 11 Fed. App'x 707, 707 (9th Cir. 2001) ("An express waiver of appeal is valid if the guilty plea is knowingly and voluntarily made."); *accord United States v. Andis*, 333 F.3d 886, 889-90 (8th Cir.2003) (en banc); *United States v. Mason*, 343 F.3d 893, 894 (7th Cir. 2003).

**Issue Two**: **A Defendant-Appellant's Actual Innocence of the Offense of Conviction Constitutes An Exception To A Waiver-Of-Appeal Provision In A Plea Agreement.**

The motions panel rejected appellant's alternative argument that his actual innocence of the § 922(g)(1) charge prevents enforcement of the waiver-of-appeal provision in the plea agreement. **Appendix A**. The motions panel relied on *United States v. Goodall*, 21 F.4th 555, 562-63 (9th Cir. 2021), for this proposition. *Goodall* did not address whether an "actual innocence" exception to the normal rule that waiver-of-appeal provisions in a plea agreement exists because the defendant-appellant in that case did not argue such an exception exists. Nowhere in the briefs or this Court's opinion in *Goodall* does the word "innocent" or "innocence" appear.

As other circuits have held, a waiver-of-appeal provision in a plea agreement does not apply if a defendant can establish his actual innocence of the challenged conviction. *See, e.g.*, *United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016); *United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006). Allowing the conviction of an actually innocent person is a "miscarriage of justice" that warrants correction notwithstanding a waiver-of-appeal provision in a plea agreement. *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir. 2011) (indicating that an appellate wavier will not be enforced if it would result in a "miscarriage of justice") (citing *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc)); *cf. Bousley v. United States*, 523 U.S. 614, 624 (1998) (characterizing a

13

defendant's actual innocence of the offense of conviction as a "miscarriage of justice"). As discussed below, appellant is actually innocent of the *mens rea* element. This Court thus should not enforce the waiver provision.

> **Issue Three**: The Motions Panel Contravened *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994), and *United States v. Gonzalez*, 981 F.2d 1037, 1038 (9th Cir. 1992), by Addressing the Merits of Appellant's Substantial Claims that His Guilty Plea Is Constitutionally Invalid and that He Is Actually Innocent Rather than Referring His Case to a Merits Panel to Afford Plenary Consideration to that Issue.

In *United States v. Michlin*, 34 F.3d 896 (9th Cir. 1994), this Court stated that it was improper for a motions panel to decide whether the defendant-appellant's guilty plea was involuntary (as a basis for avoiding a waiver-of-appeal provision in a plea agreement) and referred the appeal to a merits panel to consider the threshold involuntariness issue. *See Michlin*, 34 F.3d at 898 ("Because Michlin argued in response to the government's motion that his appeal called into question the validity of the waiver [on the ground that his guilty plea was involuntary], a motions panel of this court [properly] denied the motion to dismiss . . . .") (citing *United States v. Gonzalez*, 981 F.2d 1037 (9th Cir. 1992)); *see also Gonzalez*, 981 F.2d at 1938 ("[A]ppellant's contention [that the government breached the plea agreement] calls into question the validity of the waiver. This issue should be resolved by a merits panel [rather than a motions panel]."). The motions panel in appellant's case

14

likewise should not have addressed that issue and, instead, referred the case to a merits panel to afford plenary consideration of that issue.

> **Issue Four**: **At the Very Least, this Court Should Hold This Motion in Abeyance Pending the En Banc Court's Decision in *United States v. Atherton*, 21-30266 (9th Cir.), as That Decision May Be Relevant to the Issue Raised in Appellant's Case.**

On April 24, 2025, this Court granted the United States's petition for rehearing *en banc* in *United States v. Atherton*, 134 F.4th 1009 (9th Cir. 2025) (en banc). This Court, sitting en banc, potentially will consider whether to adopt a "miscarriage of justice" exception to the general rule that a waiver-of-appeal provision in a plea agreement should be enforced. *See* United States's Petition for Rehearing En Banc, (*United States v. Atherton*, No. 21-30266), at 10, 15. As noted supra, such an exception should encompass a claim of actual innocence. At the very least, this Court should hold this motion in abeyance pending that en banc decision.

## CONCLUSION

For the foregoing reasons, this Court should grant reconsideration *en banc*.

Dated: September 8, 2025          Respectfully submitted,

/s/ *Brent Evan Newton*
Brent Evan Newton

**Appointed Counsel for Appellant Gerald Blaise II**

15

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** | 25-463

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
32(a)(4)-(6) and **contains the following number of words:** |_____| .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◉ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Brent Evan Newton | **Date** | 9/8/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*